1

2

3

4

5

6

7

8  UNITED STATES DISTRICT COURT

9  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  GENERAL PRODUCE CO., LTD., a
California limited partnership,

12
                                    No.  2:13-cv-0750 MCE DAD
              Plaintiff,
13

14        v.

15  WAREHOUSE MARKETS, LLC, a               FINDINGS AND RECOMMENDATIONS
California limited liability company;
MICHAEL A. WEBB, an individual;
16  NYCOLE WARREN, an individual; and
C & S WHOLESALE GROCERS, INC.,
17  a Vermont corporation,

18              Defendants.

19  ────────────────────────────

20  FRESHKO PRODUCE SERVICES,
INC., a California corporation,
21
                   Intervening-Plaintiff,
22        v.

23  WAREHOUSE MARKETS, LLC, a
California limited liability company;
24  MICHAEL A. WEBB, an individual;
NYCOLE WARREN, an individual; and
25  C & S WHOLESALE GROCERS, INC.,
a Vermont corporation,
26
              Defendants.
27

28

1

1   This matter came before the court on October 17, 2014, for hearing of intervening plaintiff

2   FreshKo Produce Services, Inc.'s, ("FreshKo"), motion for default judgment.  Attorney June

3   Monroe appeared on behalf FreshKo.  No appearance was made by or on behalf of any defendant.

4   Oral argument was heard and the motion was taken under submission.  Having considered all

5   written materials submitted with respect to the motion, and after hearing oral argument, the

6   undersigned recommends that the intervening plaintiff's motion for default judgment be granted.

7                                          PROCEDURAL BACKGROUND

8   On April 17, 2013, plaintiff General Produce Co., Ltd., ("General Produce"), commenced

9   this action by filing a complaint and paying the required filing fee.[1]  (Dkt. No. 1.)  Defendants

10  Warehouse Markets, LLC, ("Warehouse"), Michael A. Webb, Nycole Warren and C & S

11  Wholesale Grocers, Inc., ("C &S Wholesale"), ("Defendants"), filed answers in May of 2013.

12  (Dkt. Nos. 9-11.)  On June 6, 2013, the parties filed a stipulation to stay pending defendant

13  Warehouse's payment to plaintiff General Produce the sum of $70,636.79.  (Dkt. No. 12.)  On

14  June 10, 2013, the assigned District Judge issued an order, pursuant to the parties' stipulation,

15  staying this action pending either dismissal or plaintiff's providing of notice of defendants'

16  default as to payment.  (Dkt. No. 13.)

17  On December 10, 2013, General Produce filed a notice of default in payment with the

18  court.  (Dkt. No. 16.)  On December 23, 2013, the assigned District Judge vacated the stay of this

19  action.  (Dkt. No. 18.)  On January 14, 2014, FreshKo filed a motion for leave to intervene in this

20  action.  (Dkt. No. 19.)  The assigned District Judge granted FreshKo's motion to intervene on

21  April 10, 2014.  (Dkt. No. 30.)

22  On April 18, 2014, FreshKo filed an intervening complaint.  (Dkt. No. 31.)  Therein,

23  FreshKo alleges causes of action for breach of contract, against defendant Warehouse, and

24  violations of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e, et seq.,

25  unjust enrichment and conversion against defendants Warehouse, Michael A. Webb, Nycole

26  /////

27

28  [1]  On March 30, 2015, the assigned District Judge took General Produce's motion for summary judgment under submission.

2

1    Warren and C & S Wholesale.  The complaint seeks declaratory relief, damages in the amount of

2    $41,869.50 plus fees, costs and interest.

3         On August 19, 2014, FreshKo filed a request for the Clerk's entry of defendants' default,

4    (Dkt. No. 47), and on August 22, 2014, the Clerk of the Court entered defendants' default.[2]  (Dkt.

5    No. 48.)  On July 24, 2014, the assigned District Judge granted a motion to withdraw as counsel

6    of record filed by defendants' counsel.[3]  (Dkt. No. 41.)  FreshKo filed the motion for default

7    judgment now pending before the court on September 15, 2014, and it came for hearing before

8    the undersigned pursuant to Local Rule 302(c)(19) on October 17, 2014.  (Dkt. Nos. 49 & 54.)

9    Despite being served with all papers filed in connection with FreshKo's motion for default

10   judgment (Dkt. No. 53) there was no opposition to the motion for default judgment filed by any

11   defendant nor did any of the defaulting defendants appear at the hearing on the motion for default

12   judgment.[4]

                              LEGAL STANDARDS

13

14        Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default

15   judgment.  Upon entry of default, the complaint's factual allegations regarding liability are taken

16   as true, while allegations regarding the amount of damages must be proven.  Dundee Cement Co.

17   v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United

18

19   [2]  Because the defendants had already appeared in this action and consented to electronic service
     FreshKo's complaint was served on the defendants on April 18, 2014, when the complaint was

20   filed.  Local Rule 135(a).

21
     [3]  According to the declaration submitted by counsel in support of the motion to withdraw,

22   defense counsel had been attempting to contact defendants "to prepare to respond to the
     complaint" of FreshKo but had not received any response from any defendant.  (Dkt. No. 34 at 2.)

23

24   [4]  While every defendant in this case was served by FreshKo with the motion for default
     judgment, (Dkt. No. 53), such service generally is not required on defendants who have been held

25   in default.  See FED. R. CIV. P. 55(b)(2) (requiring that written notice of an application for default
     judgment be served upon the party against whom judgment is sought only if that party "has

26   appeared in the action"); Local Rule 135(d) (excusing parties from serving documents submitted
     to the court upon "parties held in default for failure to appear" unless a document asserts new or

27   additional claims for relief against the defaulting parties).  Nonetheless, out of an abundance of
     caution, FreshKo prudently served every defendant with all papers related to the pending motion

28   for default judgment.

                                            3

1  States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also

2  DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826

3  F.2d 915, 917-18 (9th Cir. 1987).

4       Where damages are liquidated, i.e., capable of ascertainment from definite figures

5  contained in documentary evidence or in detailed affidavits, judgment by default may be entered

6  without a damages hearing.  Dundee, 722 F.2d at 1323.  Unliquidated and punitive damages,

7  however, require "proving up" at an evidentiary hearing or through other means.  Dundee, 722

8  F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

9       Granting or denying default judgment is within the court's sound discretion.  Draper v.

10  Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir.

11  1980).  The court is free to consider a variety of factors in exercising its discretion.  Eitel v.

12  McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among the factors that may be considered by

13  the court are

14      (1) the possibility of prejudice to the plaintiff, (2) the merits of
15  plaintiff's substantive claim, (3) the sufficiency of the complaint,
   (4) the sum of money at stake in the action; (5) the possibility of a
16  dispute concerning material facts; (6) whether the default was due
   to excusable neglect, and (7) the strong policy underlying the
17  Federal Rules of Civil Procedure favoring decisions on the merits.

18  Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

19  ANALYSIS

20  I.    Whether Default Judgment Should Be Entered

21       According to the allegations found in FreshKo's intervening complaint, between April 16,

22  2013, and November 16, 2013, FreshKo sold and shipped perishable agricultural produce to

23  defendant Warehouse, who "was engaged in the handling of produce in interstate and/or foreign

24  commerce as a commission merchant, dealer, and/or retailer subject to the provisions of the

25  /////

26  /////

27  /////

28

4

PACA," for which defendant Warehouse agreed to pay FreshKo $41,869.50.[5] (Compl. (Dkt. No. 31) at 3[6].) FreshKo thereafter has repeatedly demanded payment from defendant Warehouse, but Warehouse has refused to satisfy its debt.

Moreover, pursuant to 7 U.S.C. § 499e(c)(1)-(4) of the PACA, upon defendant Warehouse's receipt of this produce, FreshKo became the beneficiary of a "floating, non-segregated statutory trust on all of Defendant Warehouse's perishable agricultural commodities . . . ." (Compl. (Dkt. No. 31) at 4.) FreshKo "performed and fulfilled all duties required to preserve its trust benefits," and the "trust require[d] . . . Defendants to hold and preserve such goods, inventories, proceeds and receivables in trust for the benefit" of FreshKo. (Id. at 5.) However, defendants Warehouse, Michael Webb and Nycole Warren, "diverted the trust assets," to third parties, "including but not limited to Defendant C & S . . . ." (Id.) FreshKo "demanded that Defendants pay the amounts due" but "[d]espite these demands, Defendants have failed and refused to truly, correctly and accurately account for and make full payment of the proceeds of those transactions," in violation of PACA. (Id. at 6.)

FreshKo "is informed and believes," that defendants Michael Webb and Nycole Warren, "were in positions to control the day-to-day operations and the financial dealings of Warehouse . . . ." (Id. at 7.) Through this control, and with full knowledge of and responsibility for the handling of PACA Trust obligations, defendants Webb and Warren diverted PACA trust assets "to Defendants and/or Defendants' own use . . . ." (Id.) In this regard, defendants have "converted" to their own use and benefit, "or to other third parties, including but not limited to Defendant C & S, the goods delivered to Defendants" by FreshKo valued at $41,869.50. (Id. at 8.) Defendants have also diverted "payments of the accounts receivable, assets of the PACA trust and monies due and owing" FreshKo to defendant C & S Wholesale. (Id. at 9.)

---

[5] According to the complaint, Warehouse "purchased "wholesale and jobbing' quantities in 'aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received.'" (Compl. (Dkt. No. 31) at 4) (quoting 7 C.F.R. § 46.2(x)).

[6] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

Accordingly, the complaint alleges causes of action for breach of contract, unjust enrichment, conversion and violations of PACA, and seeks, in relevant part, damages in the amount of $41,869.50, attorneys' fees, costs and interest.  (Id. at 11-13.)  In the motion for default judgment pending before the court, FreshKo specifically seeks the $41,869.50 in damages, as well as $12,405.50 in attorney's fees and pre and post-judgment interest of 18% per annum.  With respect to the pre-judgment interest, FreshKo seeks $9,760.90 in pre-judgment interest up to and including September 12, 2014, and thereafter at a rate of $20.65 until judgment is entered.[7]  (MDJ (Dkt. No. 50) at 6.)

"California law defines conversion as 'any act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with his rights therein.'"  In re iPhone Application Litigation, 844 F.Supp.2d 1040, 1074 (N.D. Cal. 2012) (quoting In re Bailey, 197 F.3d 997, 1000 (9th Cir. 1999)).  The elements of a cause of action for breach of contract under California law "are the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages."  First Commercial Mortgage Co. v. Reece, 89 Cal.App.4th 731, 745 (2001).  "The elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another."  Lectrodryer v. SeoulBank, 77 Cal.App.4th 723, 726 (2000).

With respect to PACA, "[d]ealers violate PACA if they do not pay promptly and in full for any perishable commodity in interstate commerce."  Grimmway Enterprises, Inc. v. PIC Fresh Global, Inc., 548 F.Supp.2d 840, 846 (E.D. Cal. 2008) (citing 7 U.S.C. § 499b(4)).  Moreover, 7 U.S.C. § 499e(c)(2) provides, in relevant part, that:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

_____

[7]  An annual interest rate of 18% on a balance of $41,869.50 corresponds to $20.65 per day in interest.

1    "'Through this trust, the sellers of the commodities maintain a right to recover against the

2    purchasers superior to all creditors, including secured creditors.'" Boulder Fruit Exp. & Heger

3    Organic Farm Sales v. Transportation Factoring, Inc., 251 F.3d 1268, 1270 (9th Cir. 2001)

4    (quoting Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1067 (2nd Cir. 1995)).

5    "PACA liability attaches first to the licensed seller of perishable agricultural commodities" and if

6    the seller cannot satisfy the liability, "others may be found secondarily liable if they had some

7    role in causing the corporate trustee to commit the breach of trust." Sunkist Growers, Inc. v.

8    Fisher, 104 F.3d 280, 283 (9th Cir. 1997). See also Grimmway Enterprises, 548 F.Supp.2d at 847

9    ("Individual shareholders, officers, or directors of a corporation who are in a position to control

10   PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held

11   personally liable under the Act.").

12       In light of the above, weighing the factors outlined by the court in Eitel, 782 F.2d at 1471-

13   72, the undersigned has determined that entry of default judgment against the defaulting

14   defendants is appropriate.  The defaulting defendants have made no showing that the failure to

15   respond to the complaint is due to excusable neglect.  FreshKo's complaint is sufficient, and there

16   is no reason to doubt the merits of the substantive claims.  In light of the defaulting defendants'

17   failure to respond to FreshKo's complaint and the lack of opposition to FreshKo's claims, there is

18   no possibility of a dispute concerning the material facts underlying the action.  Moreover, the

19   amount of money at stake, although not insignificant, is proportionate to the defendants' conduct.

20   While recognizing the public policy favoring decisions on the merits, the court finds that a

21   decision on the merits has been rendered impossible by the actions of the defaulting defendants.

22   Because these factors weigh in FreshKo's favor, the undersigned will therefore recommend that

23   FreshKo's motion for default judgment be granted.

24   II.      Terms of the Judgment

25       After determining that default judgment is warranted, the court must next determine the

26   terms of the judgment.  Any relief granted may not be different in kind from, or exceed in

27   amount, what is demanded in the complaint.  FED. R. CIV. P. 54(c).

28   /////

1    As noted above, FreshKo seeks $41,869.50 in actual damages stemming from the produce

2    it provided without compensation.  In support of this recovery, FreshKo has submitted both

3    declarations and copies of FreshKo's billing invoices to Warehouse.  (Dkt. Nos. 51 & 52.)

4    FreshKo also seeks the award of  $12,405.50 in attorney's fees and pre and post-judgment interest

5    at the rate of 18% per annum "pursuant to the contract terms of the sales agreement with

6    Warehouse . . . ."  (MDJ (Dkt. No. 50) at 6.)

7    In support of the recovery of attorney's fees and interest, FreshKo has submitted a

8    declaration from Joseph Austin, FreshKo's Controller, who declares that in April of 2013,

9    defendant Michael Webb completed a FreshKo credit agreement on behalf of defendant

10   Warehouse which expressly provided that Warehouse agreed to pay interest at the rate of 18% per

11   annum on all unpaid balances and that in the event of legal action the prevailing party was

12   entitled to attorney's fees.  (Austin Decl. (Dkt. No. 52) at 2.)  FreshKo has submitted a copy of

13   that credit agreement which states that "[t]he undersigned expressly agrees" to pay attorney's fees

14   and that "[c]harges not paid by terms will incur penalties of 1.5% per month . . . ."  (Dkt. No. 52-

15   1 at 2.)  FreshKo has also submitted a declaration from counsel, calculations related to pre-

16   judgment interest and copies of invoices in support of the requested award of attorney's fees.

17   (Dkt. No. 51 & 51-2.)

18   "The plain meaning of the PACA statute's words 'in connection with' encompasses not

19   only the price of the perishable agricultural commodities but also additional related expenses,

20   including contractual rights to attorneys' fees and interest, in a PACA claim."  Middle Mountain

21   Land and Produce Inc. v. Sound Commodities Inc., 307 F.3d 1220, 1222-23 (9th Cir. 2002).  See

22   also Sequoia Sales, Inc. v. P.Y. Produce, LLC, No. CV 10-5757 CW (NJV), 2011 WL 3607242,

23   at *8 (N.D. Cal. July 29, 2011) ("Because language contained in invoices regarding attorneys'

24   fees and interest creates an enforceable contract . . . Defendants are liable for attorneys' fees and

25   interest."); Henry Avocado Corp. v. Polo's Produce, Inc., No. 1:10-cv-1298 AWI JLT, 2010 WL

26   4569136, at *5 (E.D. Cal. Nov. 3, 2010) ("district courts within this Circuit have imposed

27   contractual obligations as to terms first expressed in invoices preserving a PACA trust"); Rey Rey

28   Produce SFO, Inc. v. M & M Produce and Food Service Supplies, Inc., No. C05-4504 BZ, 2006

1    WL 1867633, at *4 (N.D. Cal. July 5, 2006) ("The attorney's fees provision in the invoices

2    creates a contractual right binding defendants, and plaintiff is therefore entitled to properly

3    documented attorney's fees necessarily incurred in collection.").

4        Accordingly, consistent with the relief requested by the complaint and plaintiff's motion

5    for default judgment, and consistent with the evidence submitted, the undersigned will

6    recommend that FreshKo be awarded $41,869.50 in damages, pre-judgment interest of $9,760.90

7    up to and including September 12, 2014 and thereafter at a rate of $20.65 per day until judgment

8    is entered[8], post-judgment interest at the rate of 18% per annum and attorney's fees in the amount

9    of $12,405.50.[9]

10                                 CONCLUSION

11        Accordingly, IT IS HEREBY RECOMMENDED that:

12        1.  The motion for default judgment filed by FreshKo Produce Services, Inc., (Dkt. No.

13    49), be granted;

14        2.  The court enter a default judgment against defendants Warehouse Markets, LLC,

15    Michael A. Webb, Nycole Warren and C & S Wholesale Grocers, Inc., in the amount of

16    $41,869.50;

17        3.  Defendants Warehouse Markets, LLC and Michael A. Webb be ordered to pay

18    FreshKo Produce Services, Inc., $12,405.50 in attorney's fees;

19        4.  Defendants Warehouse Markets, LLC and Michael A. Webb be ordered to pay

20    FreshKo Produce Services, Inc., $9,760.90 in pre-judgment interest up to and including

21    September 12, 2014;

22        5.  Defendants Warehouse Markets, LLC and Michael A. Webb be ordered to pay

23    FreshKo Produce Services, Inc., pre-judgment interest at the rate of $20.65 per day from

24

25    [8]  According to evidence submitted by FreshKo, pre-judgment interest up to and including
   September 12, 2014 amounts to $9,760.90 and accrues thereafter at a rate of $20.65 per day until
26    judgment is entered.  (MDJ (Dkt. No. 50) at 6; Monroe Decl. (Dkt. No. 51) at 3.)

27    [9]  Because it does not appear that defendant Nycole Warren or defendant C & S Wholesale were a
   party to the sales agreement the undersigned will recommend the award of pre and post-
28    judgement interest and attorney's fees only against defendants Warehouse and Michael Webb.

1   September 12, 2014 until judgment in entered; and

2       6.  Defendants Warehouse Markets, LLC and Michael A. Webb pay post-judgment

3   interest at a rate of 18% per annum.

4       These findings and recommendations will be submitted to the United States District Judge

5   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

6   days after these findings and recommendations are filed, any party may file written objections

7   with the court.  A document containing objections should be titled "Objections to Magistrate

8   Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed

9   within seven (7) days after service of the objections.  The parties are advised that failure to file

10  objections within the specified time may, under certain circumstances, waive the right to appeal

11  the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12  Dated:  April 1, 2015

13

14      _____
        DALE A. DROZD
15      UNITED STATES MAGISTRATE JUDGE
    DAD6
    Ddad1\orders.civil\freshko0750.mdj.f&rs.docx
16

17

18

19

20

21

22

23

24

25

26

27

28

10