UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL PRODUCE CO., LTD., a California limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>WAREHOUSE MARKETS, LLC, a California limited liability company; MICHAEL A. WEBB, an individual; NYCOLE WARREN, an individual; and C & S WHOLESALE GROCERS, INC., a Vermont corporation,<br><br>Defendants.<br>_____<br>FRESHKO PRODUCE SERVICES, INC., a California corporation,<br><br>Intervening-Plaintiff,<br><br>v.<br><br>WAREHOUSE MARKETS, LLC, a California limited liability company; MICHAEL A. WEBB, an individual; NYCOLE WARREN, an individual; and C & S WHOLE GROCERS, INC., a Vermont corporation,<br><br>Defendants. | No. 2:13-cv-00750-MCE-DAD<br><br>**MEMORANDUM AND ORDER** |

Plaintiff General Produce Co., Ltd. (") filed this lawsuit on April 17, 2013 for enforcement of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e et seq. ('PACA") against Defendants Warehouse Markets, LLC, Michael Webb, Nycole Warren, and C&S Wholesale Grocer, Inc. (collectively referred to as "Defendants" or "Warehouse").  Defendants were initially represented by counsel, until the Court granted counsel's unopposed Motion to Withdraw (ECF No. 32), which left all Defendants in pro se except Warehouse Markets, LLC and C&S Wholesale Grocers.[1]  General Produce proceeded to file the Motion for Summary Judgment now before the Court (ECF No. 57), and no Defendant has filed an opposition to that Motion.  For the reasons set forth below, General Produce's Motion will be granted.[2]

## FACTUAL BACKGROUND[3]

Between February 5, 2013 and April 4, 2013, General Produce sold perishable agricultural commodities to Defendant Warehouse Markets.  In its credit agreement application, Warehouse's President, Defendant Michael Webb, agreed to pay 1) all charges on Warehouse's account with General Produce; 2) interest on unpaid balances at the rate of 1.5% per month (18% per annum); and 3) reasonable attorney's fees and costs in the event legal action becomes necessary to enforce payment.  Warehouse's Controller, Defendant Nycole Warren, was listed as the contact person for payment, and she told Clifford J. Rubens, General's controller, that she was the individual who determined, on Warehouse's behalf, which vendors received payment and which did not.

---

[1] As corporate entities, Defendants Warehouse and C&S cannot represent themselves in propria persona.  Although the Court's Order of July 24, 2014 (ECF No. 41) directed those defendants to advise the Court in writing, within 30 days, of their progress in locating and/or retaining new counsel, no such notification has ever been made.

[2] Because oral argument was not deemed of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Local Rule 230(g).

[3] This factual summary is derived from Plaintiff's unopposed Statement of Undisputed Facts (ECF No. 59) and from the docket in this matter.

Warehouse's failure to pay for the produce it purchased prompted General Produce to file this lawsuit on April 17, 2013.  At the time of filing, Warehouse carried an unpaid balance in the amount of $70,636.79.  Due to payments, that amount has since been reduced to $19,636.79.  At no time has Warehouse challenged these amounts owed.  Moreover, according to Clifford Rubens, Warehouse's receipts from produce sales were not segregated, and payments made by Warehouse to its dry-grocery vendor, Defendant C&S, were made from the same commingled funds subject to the PACA trust inuring to perishable agricultural commodities.

The Court also notes that on April 18, 2014, after receiving permission to intervene, another purveyor of perishable agricultural commodities, FreshKo Produce Services, Inc., filed its Complaint in Intervention (ECF No. 31).  Through that Complaint, FreshKo asserts that it provided produce to Warehouse, without compensation, in the sum of $41,869.50.  FreshKo further seeks fees, costs and interests on that unpaid sum.

## STATUTORY FRAMEWORK

PACA was originally enacted by Congress in 1930 to protect sellers of perishable agricultural commodities from unfair conduct by dealers, brokers, and commission merchants.  Its purpose was to prevent "unfair business practices and [to promote] financial responsibility in the fresh fruit and produce industry." Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 282 (9th Cir. 2007).  As remedial legislation, PACA should be construed liberally to effectuate its statutory purpose of protecting unpaid sellers of perishable agricultural commodities.  Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 782 (8th Cir. 1991).

In 1984, after determining that increased payment problems in the produce industry needed to be further addressed, Congress amended PACA to provide additional protections to produce sellers through the establishment of a non-segregated, "floating" statutory trust in which a produce buyer, as trustee, holds its produce-related assets in

trust as a fiduciary until full payment is made to the produce seller trust beneficiary. 7 U.S.C. § 499e(c); Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154, 156 (11th Cir. 1990). To that end, the PACA now provides as follows:

> Perishable agricultural commodities received . . . , and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held . . . in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transaction have been received by such unpaid suppliers . .

7 U.S.C. § 499e(c)(2).

The PACA trust thereby created attaches by operation of law upon delivery of the produce and continues until full payment for the produce has been made. Frio Ice, 918 F.2d at 156; 7 C.F.R. § 46.46(d)(1); 7 U.S.C. §499e(c)(2).  The produce buyer is required to maintain trust assets so that such assets are available to satisfy all outstanding obligations to sellers of produce.  7 C.F.R. § 46.46(e).  When trust assets have been commingled with funds not subject to the trust, a PACA trust is impressed upon the entire commingled fund for the benefit of the trust beneficiaries.  In re Gotham Provision Co., Inc., 669 F.2d 1000, 1011-12 (5th Cir. 1982), cert. denied 459 U.S. 858 (1982).[4]  Additionally, PACA trust assets acquired by third parties are subject to disgorgement in order to pay PACA creditors.  Those with actual or constructive notice of the trust must disgorge trust assets unless they can show they are a bona fide purchaser for value.  See In re Richmond Produce Co., Inc., 112 B.R. 364, 376-7 (Bankr. N.D. Cal. 1990); see also JC Produce, Inc. v. Paragon Steakhouse Restaurants, Inc., 70 F. Supp. 2d 1119, 1122 n. 7 (E.D. Cal. 1999) ("Courts have generally held that PACA trust beneficiaries can enforce PACA trust against any person, whether or not subject to PACA's licensure requirement.").

---

[4] Although Gotham Provision was decided in the context of the Packers and Stockyard Act, 7 U.S.C. § 181 et seq, ("PSA"), the trust provisions of both the PSA and PACA are similarly interpreted and courts look to the PSA for guidance in interpreting PACA.  In re Richmond Produce Co., Inc., 112 B.R. 364, 377 n.3 (Bankr. N.D. Cal. 1990).

The responsibility for maintaining PACA assets extends beyond the contracting parties, and individuals responsible for the financial dealings of a produce buyer are personally liable to PACA trust creditors for dissipation of PACA trust assets. Sunkist Growers, Inc. v. Fisher, 104 F.3d at 283.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

There is no dispute that the produce purchased by Warehouse from General Produce was subject to the provisions of the PACA; indeed, each invoice reflecting Warehouse's purchases contained a specific notice that "the perishable agricultural commodities listed on this invoice are subject to [PACA's] statutory trust . . . ." See

Invoices, Exs. B and C to Decl. of Clifford J. Rubens (ECF No. 60).  It is also undisputed, and the evidence presented in support of this Motion substantiates that Warehouse continues to owe some $19,636.79 in unpaid invoices.   The evidence further shows that Defendants Webb and Warren, as Warehouse's President and Controller, respectively, were responsible for Warehouse's financial dealings, and that Defendant C&S received funds from Warehouse's commingled accounts and is thereby liable for dissipating funds subject to the PACA trust.

It is equally uncontroverted that the Credit Agreement between General Produce and Warehouse  contained provisions under the terms of which Warehouse agreed to pay interest at the rate of 1.5% per month (18% per cent  per annum) on unpaid invoices, along with reasonable attorney's fees and costs in the event that legal action was necessary to enforce payment.  See Credit Agreement, Ex. A to Rubens Decl.

Plaintiff has submitted documents showing that it has incurred $8,480.00 in attorney's fees in pursuing this matter, as well as costs in the amount of $470.00.  See Rubens Decl., ¶ 13; Decl., of Daniel A. McDaniel, ¶ 6.  General Produce has also calculated interest due, as of January 23, 2015, in the amount of $6,185.59.

## CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 57) is GRANTED.  Plaintiff is accordingly entitled to judgment against Defendants in the principal sum of $19 636.79, interest in the amount of $6,185.59 as of January 23,

///
///
///
///
///
///

2015 (and continuing to accrue on the unpaid balance at the rate of 1.5% per month), attorney's fees in the sum of $8,480.00, and costs totaling $470.00.[5]

IT IS SO ORDERED.

Dated: June 1, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] The entitlement of Intervening Plaintiff Freshko Produce Services, Inc. for its unpaid invoices (along with fees, costs, and interest) is addressed in a separate Order filed concurrently with the Court's Memorandum and Order herein.